LAW OFFICES OF JOHN L. BURRIS
John L. Burris, Esq. (SBN 69888) (Local Counsel)
Adanté D. Pointer Esq. (SBN 236229) (Local Counsel)
Patrick M. Buelna, Esq. (SBN 317043) (Local Counsel)
E-mail:  john.burris@johnburrislaw.com
10880 Wilshire Blvd., Suite 1202
Los Angeles, CA  90024
Tel: (510) 839-5200
Fax: (510) 839-3882

WASHINGTON LAW FIRM, P.C.
Daryl K. Washington, Esq. (*pro hac vice* pending)
(Texas SBN: 24013714)
Email:  dwashington@dwashlawfirm.com
325 N. St. Paul, Suite 3950
Dallas, TX 75201
Tel: (214) 880-4883
Fax: (214) 751-6685

MERRITT LAW FIRM, LLC
S. Lee Merritt, Esq. (*pro hac vice* pending)
(PA SBN: 314891)
Email: slm@merrittatlaw.com
1910 Pacific Ave., Suite 11500
Dallas, Texas 75201
Tel: (888) 647-3041
Fax: (888) 339-2050

Attorneys for PLAINTIFFS:
BRITTANY CHANDLER, as the next friend of minor, L.Y.
LONEISHA PATTERSON, as the next friend of minor, J.Y.
SAMANTHA ROBLEDO, as the next friend of minor, L.Y.
THE ESTATE OF DIANTE YARBER

# UNITED STATES DISTRICT COURT FOR THE

## CENTRAL DISTRICT OF CALIFORNIA

**BRITTANY CHANDLER, as the Next Friend of minor L.Y., LONEISHA PATTERSON, as the Next Friend of minor, J.Y., SAMANTHA ROBLEDO, as the Next Friend of minor, N.Y, AND AS SUCESSOR IN INTEREST TO DIANTE YARBER, DECEASED.**

                                  **Plaintiffs,**

**vs.**

**THE CITY OF BARSTOW, CA, JIMMY ALFRED WALKER, JOSE BARRIENTOS, VINCENT CARILLO, MATTHEW ALLEN HELMS and DOES 5-10,**

                    **Defendants.**

Case No. _____

**ORIGINAL COMPLAINT FOR DAMAGES**

1. Fourth Amendment—Excessive Force (42 U.S.C. § 1983)
2. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
3. Municipal Liability—Ratification (42 U.S.C. § 1983)
4. Municipal Liability—Failure to Train (42 U.S.C. § 1983)
5. Fourth Amendment—Denial of Medical Care (42 U.S.C. § 1983)
6. Substantive Due Process (42 U.S.C. § 1983)
7. Negligence (Wrongful Death/Survival)
8. Assault and Battery (Wrongful Death/Survival)
9. Violation of Cal. Civil Code § 52.1
10. Violation of Cal. Civil Code § 51.7

DEMAND FOR JURY TRIAL

## JURISDICTION AND VENUE

1.      Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, to redress the deprivation of rights,

privileges and immunities guaranteed to Plaintiffs by constitutional and statutory provisions.

2.      Venue is proper in this Court because all incidents, events, and occurrences giving rise to this action occurred within the Central District of California.

3.      PLAINTIFFS filed a timely claim under Government Code Section 911.2 et al. and brings pendent actions under state law.

## PARTIES AND JURISDICTION

4.      The PLAINTIFF, BRITTANY CHANDLER, is the next friend of minor, L.Y., and a successor-in-interest to Diante Yarber, deceased.  L.Y. is the biological daughter of the decedent.  She brings this action on behalf of herself as an heir entitled to seek relief as a result of the unlawful and wrongful death of Diante Yarber.

5.      The PLAINTIFF, LONEISHA PATTERSON, is the next friend of minor, J.Y., a successor-in-interest to Diante Yarber, deceased.  J.Y. is the biological daughter of the decedent.  She brings this action on behalf of herself as an heir entitled to seek relief as a result of the unlawful and wrongful death of Diante Yarber.

6.      The PLAINTIFF, SAMANTHA ROBLEDO, is the next friend of minor, N.Y., a successor-in-interest to Diante Yarber, deceased.  N.Y. is the biological daughter of the decedent.  She brings this action on behalf of herself as an heir entitled to seek relief as a result of the unlawful and wrongful death of Diante Yarber.

7.      The CITY of Barstow (the "CITY") is a governmental entity, existing by virtue of the laws and Constitution of the State of California. The City Council is the governing body of the City of Barstow. It is responsible for the formulation of city policies, enacting laws and ordinances, and deciding other issues impacting the city and the community. The council provides direction to the city under the leadership of the city manager to help the city develop and implement city programs and activities for the overall growth and benefit of the city. The City Council acts as a liaison between the

community and the city staff and is also responsible as elected officials for community outreach. The CITY may be served with citation herein by and through its agent for service of process, Curt Mitchell, City Manager, at 220 East Mountain View Street, Suite A, Barstow, CA 92311 or wherever he may be found. Additional service is being made on Mayor Julie Hackbarth-McIntyre, at 220 East Mountain View Street, Suite A, Barstow, CA 92311 or wherever she may be found.

8. The Defendant, JIMMY ALFRED WALKER ("Walker") is and/or was at all times acting under color of law in the scope and course of his duties as a police officer with the Barstow Police Department. He is being sued in his individual and official capacity as an employee of the Barstow Police Department. Jimmy Walker may be served at the Barstow Police Department, at 220 East Mountain View Street, Suite B, Barstow, CA 92311 or wherever he may be found.

9. The Defendant, JOSE BARRIENTOS ("Barrientos") is and/or was at all times acting under color of law in the scope and course of his duties as a police officer with the Barstow Police Department. He is being sued in his individual and official capacity as an employee of the Barstow Police Department. Jose Barrientos may be served at the Barstow Police Department, at 220 East Mountain View Street, Suite B, Barstow, CA 92311 or wherever he may be found.

10. The Defendant, VINCENT CARRILLO ("Carrillo") is and/or was at all times acting under color of law in the scope and course of his duties as a police officer with the Barstow Police Department. He is being sued in his individual and official capacity as an employee of the Barstow Police Department. Vincent Carrillo may be served at the Barstow Police Department, at 220 East Mountain View Street, Suite B, Barstow, CA 92311 or wherever he may be found.

11. The Defendant, MATTHEW ALLEN HELMS ("Helms") is and/or was at all times acting under color of law in the scope and course of his duties as a police

Original Complaint for Damages

officer with the Barstow Police Department.  He is being sued in his individual and official capacity as an employee of the Barstow Police Department.

12.    Defendant DOES 5-10 are supervisory employees, and/or managerial, supervisorial, and policymaking employees who were acting under color of law within the course and scope of their duties as deputies of the Barstow Police Department ("BPD").   They were acting with the complete authority and ratification of their principal, Defendant CITY.

13.    The true names and capacities of DOES 5-10 are unknown to PLAINTIFFS, who otherwise sues these Defendants by such fictitious names. PLAINTIFFS will seek leave to amend this complaint to show the true names and capacities of these Defendants when they have been ascertained.   Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

14.    This is an action brought by the Plaintiffs against Defendants, the City of Barstow, California, more particularly the Barstow Police Department, Jimmy Alfred Walker, Jose Barrientos, Vincent Carrillo, Matthew Allen Helms and Does 5-10 for their use of excessive and deadly force resulting in the unlawful shooting death of Diante Yarber ("Yarber") under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

15.    This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and/or common law of the State of California.

16.    All events transactions or occurrences took place in the City of Barstow, California, unless specifically alleged otherwise.

17.    This action is otherwise properly before this Honorable Court.

1

2

## FACTS

3      18.     On or about, April 5, 2018 at approximately 10:00 a.m., during broad

4   daylight, Diante Yarber pulled into a Walmart parking lot located at 301 Montara Rd.,

5   Barstow, California. Yarber was accompanied by three passengers, Marlin Hawkins

6   ("Hawkins'), Mariana Tafoya ("Tafoya") and Wesley Yarber ("Wesley"). They were

7   there to pick up another passenger, Roseanne Joseph, who was shopping in the store.

8      19.     Once Yarber pulled into a parking space at least three (3) Barstow Police

9   Department ("BPD") mobile units surrounded his vehicle and activated their sirens.

10  Yarber had not committed a penal offense so he was unaware as to why the officers

11  were attempting to detain him. Fully complying, Yarber opened the driver's side door

12  showing his hands as he began to step out of the vehicle.  BPD Officers Walker,

13  Barrientos, Carrillo and Helms drew their weapons and began to shout profanity and

14  other violent threats at Yarber as he attempted to step out of the vehicle.  In fear of his

15  life and the safety of the passengers, Yarber put his hands back into the vehicle and

16  closed the door. The BPD Officers began to take aim at the vehicle and shout threats,

17  profanities and racial slurs. The front seat passenger recalls hearing "Nigger we will

18  fucking kill you!" as officers pointed their weapons at the driver and passenger seats.

19     20.      In order to get out of the eminent line of fire, Hawkins alighted from the

20  vehicle, opening the passenger door and leaping face down onto the ground.  In fear of

21  facing imminent death, Yarber, attempted to slowly maneuver his vehicle away from

22  the pointed guns of the officers by moving the car forward and then backwards into a

23  space between the police vehicles.

24     21.     As  Yarber's  vehicle slowly reversed away from police vehicles,  without

25  warning, Barstow police officers Walker, Barrientos, Carrillo and Helms, upon and

26  information and belief, began to fire an estimated thirty (30) rounds into the windshield

and driver side door of the vehicle.  Mr. Yarber was struck at least ten (10) times by the barrage of bullets by the Defendant Officers. Two rounds entered Yarber's chest, six rounds entered his left arm, one round entered his back, and another in the back of his right arm.

22.   Yarber attempted to shield himself from the bullets using his left arm. Yarber then turned away from the incoming bullets and faced the back of the vehicle where bullets continued to strike him from behind. Yarber writhed in pain as he climbed over the center console of the vehicle and pressed his body into the wedge between the front and back seats. Yarber struggled to breathe as the bullet wounds caused significant damage to his lungs as they began to fill with blood. Yarber's back seat passengers looked on in horror as he gasped for breath and began to choke up blood. Yarber continued to take on gunfire as the rear driver side bumper of Yarber's vehicle slowly rolled into a police unit and came to a stop. The backseat passenger Mariana Tafoya was struck in the leg and abdomen by the gun fire. The shooting came to an end after an estimated thirty (30) rounds were fired into the car.

23.   The Defendant officers continued to keep their guns trained on the now inanimate car and shout commands to the vehicles occupants. The Defendant Officers instructed the backseat passengers to show their hands and exit the car, one person at a time. Backseat passengers Tafoya and Wesley were forced to navigate around Yarber who was still struggling to breath with his upper torso wedged between the center-console and the backseat. Wesley exited the vehicle first, followed by Tafoya.  Each were placed into handcuffs and taken into custody in the back of the police vehicle. The Defendant officers continued to shout commands to Yarber who was unable to comply due to the extent of his injuries. At no time did Barstow police officers Walker, Barrientos, Carrillo and/or Helms attempt to provide medical aid and/or treatment to Mr. Yarber who eventually succumbed to his injuries.

24.     The significance of the time frame and corresponding social context should not be lost when seeking to understand Mr. Yarber's state of mind.  Mere weeks before Yarber was threatened by the Barstow Officers, the City of Sacramento, California experienced a media blitz stemming from protests over the death of Stephon Clark, a young African-American man who was killed by two city police officers responding to a 911 call about a man breaking vehicle windows.  The officers fired twenty (20) rounds at Clark, who died in the yard.

25.     And it is in this context that Yarber found himself, in a relative instant, (1) facing confrontational white police officers who unleashed serious threats and racial slurs, (2) demanded that he get out of the vehicle without explanation why, (3) by the aggressor-officers who surrounded the vehicle, causing additional fear.

26.     Upon information and belief, Defendant Walker has a reputation for being racist.  According to a news report, in 2010, Walker was charged with a hate crime and battery charges after he allegedly used racial slurs against a black man and assaulted him and a woman.  As part of a plea deal, Walker was allegedly required to make a $200 donation to the NAACP and required to attend Narcotics Anonymous Meetings. Despite Defendant Walker's conduct prior to Yarber's death, Walker remained a Barstow Police officer and was not terminated despite his conduct and multiple violations of departmental policies.

27.     Plaintiffs would show that at all times material hereto, the Defendant officers were acting under the color of law when they shot and killed Yarber.

28.     Moreover, no reasonably competent official would have concluded that the actions of the Defendant officers and the other Barstow police officers described herein would not violate Yarber's constitutional rights.  In other words, no reasonably prudent police officer under similar circumstances could have believed that the Defendant officers' conduct was justified nor was the treatment of Yarber, reasonable.

Original Complaint for Damages

29.     There is no evidence that the Defendant officers or anyone else were in danger of imminent death or great bodily harm.  There were no struggles that would indicate that the use of excessive and/or deadly force was justified.

30.     Yarber posed no risk to the Defendant officers or any other person in the immediate area.  Yarber did not attempt to harm the Defendant officers and was not committing a crime or reasonably believed to have committed a crime when the Defendant officers shot Yarber at least ten (10) times.

31.     The Defendant officers' unlawful and unwarranted acts, lack of training and the official customs or policies of the BPD caused Plaintiffs' injuries.  As a direct and proximate result of the Defendants' conduct, the Plaintiffs have sustained substantial damages and pecuniary loss.  The City of Barstow, the BPD and the City Council, the Policymaker, knew of the Defendant officers' erratic behavior and lack of training but did nothing to protect Yarber and others from the harm they suffered.

32.     Yarber was twenty six (26) years old when he was killed by the Defendant officers.  Yarber was very well liked and respected by his peers.  He was in good health, with a reasonable life expectancy of living at least 58 more years to age 84.  He leaves behind his three daughters and siblings.

32.     During his lifetime, Yarber was industrious and energetic and a good father. He gave support, advice, counsel, comfort, care, and protection to his daughters and family. In all reasonable probability, he would have continued to do so.

33.     Yarber's daughters have suffered pecuniary loss from the ***death*** of their father by virtue of the destruction of the parent-child relationship, including the right to financial support, love, affection, solace, comfort, companionship, society, emotional support, and happiness. Yarber's daughters will suffer anguish, grief, and sorrow as a result of their father's ***death*** and is likely to continue to suffer for a long time in the

9

Original Complaint for Damages

future. For these losses, Plaintiffs seek damages in a sum in excess of the minimum jurisdictional limits of the court.

34.     Upon information and belief, the BPD has not implemented policies and procedures to aggressively curtail death and/or injuries as a result of the improper use of deadly force and have not disciplined officers involved in a cover-up of a crime.

## FIRST CLAIM FOR RELIEF

### FOURTH AMENDMENT-EXCESSIVE FORCE

### (42 U.S.C. § 1983)

### (AGAINST DEFENDANTS WALKER, BARRIENTOS, CARRILLO, HELMS AND DOES 5-10)

35.     PLAINTIFFS incorporate by reference paragraphs 1 through 34 of this Complaint as if fully set forth herein.  Plaintiffs would show that the Defendant Officers' actions on the occasion in question were wrongful, malicious and reckless in depriving Yarber of his constitutional rights, as alleged more fully below.

36.     The Plaintiffs would show that at all times material hereto, the Defendant officers had a duty to avoid infliction of unjustified bodily injury to Yarber, to protect his bodily integrity and to not trample on his constitutional rights.

37.     The Plaintiffs would show that the Defendant officers failed to act as a reasonable officer would have acted in the same or similar circumstances.  That is, the Defendant officers, without justification and the need to do so, used excessive and deadly force as described above and killed Yarber without legal justification.  Yarber did not make any threatening gestures toward the Defendant officers and did not pose an immediate threat to the safety of the Defendant officers or others.

38.     The Defendant officers were not provoked when they fired at least 30 shots inside an occupied vehicle for no lawful or justifiable reason.  Yarber died as a result of at least ten (10) gunshot wounds to his body.  The excessive and deadly force used by

Defendants Walker, Barrientos, Carrillo and Helms was not reasonable, justified nor was it necessary under the circumstances.

39.     The Defendant officers' actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life threatening situation.

40.     The Plaintiffs would show that the Defendant officers denied Yarber his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

41.     The force used by the Defendant officers was unnecessary, excessive and unreasonable under the circumstances, as Yarber did not pose an immediate threat to the safety of the Defendant officers or others and the use of such excessive and deadly force was unnecessary.   The Defendant officers embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact, caused Yarber to suffer extreme and severe mental and emotional distress, agony and anxiety.

42.     As a result of the conduct of the Defendant officers Walker, Barrientos, Carrillo and Helms, they are liable to PLAINTIFFS for the DECEDENT's injuries and death, either because they were integral participants in the excessive force or because they failed to intervene to prevent these violations.

43.     The conduct of the Defendant Officers Walker, Barrientos, Carrillo and Helms was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to the Defendant officers. Decedent died a slow, painful death, struggling to breathe.

44.     Accordingly, DEFENDANTS WALKER, BARRIENTOS, CARILLO BOUCHARD, and HELMS are each liable to PLAINTIFFS for compensatory and

punitive damages under 42 U.S.C. § 1983. PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent. PLAINTIFFS seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. PLAINTIFFS also seek attorney's fees.

45. As a result of these Constitutional violations to Yarber and the injuries he sustained, Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**SECOND CLAIM FOR RELIEF**

**MUNICIPAL LIABILITY - UNCONSITUTIONAL CUSTOM OR POLICY**

**(42 U.S.C. § 1983)**

**(AGAINST DEFENDANTS CITY OF BARSTOW AND DOES 5-10)**

46. PLAINTIFFS hereby repeat, re-state, incorporate, each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

47. On and for some time prior to April 5, 2018 (and continuing to the present date) Defendants CITY, BARSTOW POLICE DEPARTMENT and DOE SUPERVISORS 5-10, deprived YARBER of the rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising, and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, of Yarber, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official policy recognized by CITY and BARSTOW POLICE DEPARTMENT.

48.     OFFICERS WALKER, BARRIENTOS, CARILLO and HELMS acted under color of law.

49.     OFFICERS WALKER, BARRIENTOS, CARILLO and HELMS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY.

50.     On information and belief, WALKER, BARRIENTOS, CARILLO and HELMS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

51.     Defendants CITY, WALKER, BARRIENTOS, CARILLO and HELMS together with other CITY policymakers, including the City Council, and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies:

a.  Using excessive force, including excessive deadly force;

b.  Providing inadequate training regarding the use of deadly force;

c.  Providing inadequate training regarding the de-escalation of force;

d.  Providing inadequate training regarding firing at an occupied vehicle; and

e.  Employing and retaining as Officers and other personnel, including ALL OFFICERS, who Defendants BARSTOW POLICE DEPARTMENT DOE SUPERVISORS 5-10, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written Barstow Police Department policies and for using excessive force;

f.  Inadequately supervising, training, controlling, assigning and disciplining BARSTOW POLICE DEPARTMENT officers and other Barstow Police Department personnel, including ALL OFFICERS, who Defendants BARSTOW POLICE DEPARTMENT and DOE SUPERVISORS 5-10 each knew, or in the exercise of

13

reasonable care, should have known had the aforementioned propensities and character traits.

g.   Employing and retaining officers who have been known to be abusive towards African Americans;

h.   Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by ALL OFFICERS, who are BARSTOW POLICE DEPARTMENT officers.

i.   Failing to adequately discipline CITY Officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

j.   Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

k.   Refusing to discipline, terminate, or retrain the officers involved, even where shootings were determined in court to be unconstitutional;

l.   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simple "code of silence," pursuant to which deputies do not report other deputies' errors, misconduct or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another deputy, while following the code, the deputy being questioned will claim ignorance of the other deputies' wrongdoing;

m.  Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in shootings of unarmed people.

n.   Having and maintaining an unconstitutional custom and practice of using

Original Complaint for Damages

excessive force and covering up police misconduct. These customs and practices by CITY, the City Council and DOE SUPERVISORS 5-10 were condoned by said defendants in deliberate indifference to the safety and rights of its civilians, including PLAINTIFFS, and DECEDENT.

52.   By reason of the aforementioned policies and practices of Defendants CITY, the City Council and DOE SUPERVISORS 5-10, PLAINTIFFS experienced severe pain and suffering and the loss of their father, for which they are entitled to recover damages.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

53.   Defendants CITY, the City Council and DOE SUPERVISORS 5-10 together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions ratified such policies.  Said defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of PLAINTIFFS, and other individuals similarly situated.

54.   By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants CITY, the City Council and DOE SUPERVISORS 5-10, acted with an international, reckless, callous disregard for the well-being of DECEDENT and his constitutional as well as human rights. Defendants CITY, DOE SUPERVISORS 5-10, and each of their actions were willful, wanton, oppressive malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

55.   Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Defendants CITY, the City Council and DOE SUPERVISORS 5-

Original Complaint for Damages

10, were affirmatively linked to, and were a significantly influential force behind, the PLAINTIFFS and the decedent's injuries.

56.     PLAINTIFFS have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

57.     PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent.  PLAINTIFFS seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. PLAINTIFFS also seek attorney's fees.

## THIRD CLAIM FOR RELIEF

### MUNICIPAL LIABILITY – RATIFICATION

### (42 U.S.C. § 1983)

### (AGAINST DEFENDANTS THE CITY OF BARSTOW AND DOES 5-10)

58.     PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 57 of this Complaint with the same force and effect as if fully set forth herein.

59.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS acted under color of law.

60.     The acts of Defendants WALKER, BARRIENTOS, CARILLO and HELMS deprived DECEDENT and PLAINTIFFS of their particular rights under the United States Constitution.

61.     Upon information and belief, the final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

62.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants

WALKER, BARRIENTOS, CARILLO and HELMS ratified the individual defendants' acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of the individual defendants' acts.

63.    Upon information and belief, a final policymaker has determined (or will determine) that the acts of Defendants WALKER, BARRIENTOS, CARILLO and HELMS were "within policy."

64.    By reason of the aforementioned acts and omissions, PLAINTIFFS have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

65.    Accordingly, Defendants CITY and DOES 5-10 each are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

66.    PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent.  PLAINTIFFS seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. PLAINTIFFS also seek attorney's fees.

## FOURTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY – FAILURE TO TRAIN
### (42 U.S.C. § 1983)
### (AGAINST DEFENDANTS THE CITY OF BARSTOW AND DOES 5-10)

67.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS acted under color of law;

69.     The acts of Defendants WALKER, BARRIENTOS, CARILLO and HELMS deprived DECEDENT and PLAINTIFFS of their particular rights under the United States Constitution.

70.     On information and belief, the CITY failed to properly and adequately train Defendants WALKER, BARRIENTOS, CARILLO and HELMS, including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force; and with regard to the treatment of individuals in an occupied vehicle.

71.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of less than lethal and lethal force, and with regard to the treatment of individuals in an occupied vehicle.

72.     Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

73.     The failure of Defendant CITY to provide adequate training caused the deprivation of PLAINTIFS' rights by Defendants WALKER, BARRIENTOS, CARILLO and HELMS; that is, Defendants' failure to train is so closely related to the deprivation of PLAINTIFFS' rights as to be the moving force that caused the ultimate injury.

74.     By reason of the aforementioned acts and omissions, PLAINTIFFS have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

75.    Accordingly, Defendants CITY and DOES 5-10 each are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

76.    PLAINTIFFS bring this claim both individually and as successors-in-interest to DECEDENT.  PLAINTIFFS seek survival damages, including for the nature and extent of DECEDENT's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim.  PLAINTIFFS also seek attorney's fees.

### FIFTH CLAIM FOR RELIEF
### FOURTH AMENDMENT – DENIAL OF MEDICAL CARE
### (42 U.S.C. §1983)
### (AGAINST Defendants WALKER, CARDENAS, BOUCHARD and WARNER)

77.    PLAINTIFFS hereby re-allege and incorporate by reference paragraphs 1 through 76 of this Complaint.

78.    Defendants WALKER, BARRIENTOS, CARILLO and HELMS acted under color of law.

79.    The denial of medical care by Defendants WALKER, BARRIENTOS, CARILLO and HELMS deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.   Defendants WALKER, BARRIENTOS, CARILLO and HELMS did nothing to assist or attempt to save Yarber's life and at least one half hour passed before help arrived.  Yarber was left in his vehicle after being shot at least ten (10) times.

80.    Defendants WALKER, BARRIENTOS, CARILLO and HELMS knew of

the risk of harm that they were enhancing by failing to provide medical treatment and/or by delaying such treatment.

81.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS's delay in providing medical treatment reflects deliberate indifference and reckless and conscious disregard for the obvious risk that made the violations of Plaintiffs' constitutional rights, a reasonable probability.

82.     As a proximate result of Defendants' conduct, Yarber suffered injuries and damages as set forth herein, including great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

83.     The conduct of Defendants WALKER, BARRIENTOS, CARILLO and HELMS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

84.     As a result of their misconduct, Defendants WALKER, BARRIENTOS, CARILLO and HELMS are liable for DECEDENT's injuries, because they were active participants or because they failed to intervene to prevent these violations.

85.     PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent.  PLAINTIFFS seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. PLAINTIFFS also seek attorney's fees.

Original Complaint for Damages

## SIXTH CLAIM FOR RELIEF

## FOURTEENTH AMENDMENT-SUBSTANTIVE DUE PROCESS

## (42 U.S.C. § 1983)

## (AGAINST DEFENDANTS WALKER, CARDENAS,
## BOUCHARD and WARNER)

86.     PLAINTIFFS hereby re-alleges and incorporates by reference herein paragraphs 1 through 85 of this Complaint as though fully set forth;

87.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS under color of law.

88.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS, acting under color of state law, and without due process of law, deprived PLAINTIFFS of their right to a familial relationship in such a manner as to shock the conscience by seizing decedent by use of unreasonable, unjustified and deadly force and violence, causing injuries which resulted in DECEDENT's death, all without provocation and attempted to conceal their excessive use of force and hide the true cause of decedent's demise to deprive PLAINTIFFS of their right to seek redress, all in violation of rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

89.     The aforementioned actions of Defendants WALKER, BARRIENTOS, CARILLO and HELMS along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and PLAINTIFFS, and with purpose to harm unrelated to any legitimate law enforcement objective.

90.     Defendants WALKER, BARRIENTOS, CARILLO and HELMS are liable to PLAINTIFFS, for the DECEDENT's injuries and death, either because they were integral participants in the use of deadly force, or because they failed to intervene to

prevent these violations.

91.   PLAINTIFFS bring this claim individually and seek wrongful death damages under this claim.  PLAINTIFF also seeks attorney's fees.

## SEVENTH CLAIM FOR RELIEF

### NEGLIGENCE – WRONGFUL DEATH AND SURVIVAL

### (C.C.P. §377.60 and §377.61)

### (AGAINST ALL DEFENDANTS)

92.   PLAINTIFFS re-allege and incorporate by reference herein paragraphs 1 through 91 of this Complaint.

93.   Defendants and DOES 5-10 inclusive, by and through their respective agents and employees, proximately caused the death of DECEDENT DIANTE YARBER, on April 5, 2018 as a result of their negligent conduct and/or negligent failure to act as set-forth herein.

94.   Police Officers and volunteers, including Defendants, have a duty to use reasonable care to prevent harm or injury to others.  This duty includes, but is not limited to, using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

95.   Defendants breached this duty of care.  Upon information and belief, the actions and inactions of Defendants were negligent and reckless, including but not limited to:

      (a)   the failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against DECEDENT;

      (b)   the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

(c) the negligent detention, arrest, and use of force, including deadly force, against DECEDENT;

(d) the negligent communication of information during the incident;

(e) the negligent post-shooting conduct, including the failure to provide prompt medical care to DECEDENT; and

(f) the failure to properly train and supervise employees and volunteers, including WALKER, BARRIENTOS, CARILLO and HELMS.

96. The CITY is vicariously liable for the wrongful acts of WALKER, BARRIENTOS, CARILLO and HELMS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

97. As an actual and proximate result of said defendants' negligence, and the resulting death of DECEDENT, PLAINTIFFS have sustained pecuniary loss resulting from the loss of companionship, comfort, support, society, care, sustenance and services of their father, decedent, and will continue to be so deprived for the remainder of their natural lives, in an amount according to proof at trial.

98. As a further actual and proximate result of said defendants' negligence, PLAINTIFFS incurred funeral and burial expenses, in an amount according to proof at trial.

99. Pursuant to California C.C.P. Sections 377.30, 377.60 and 377.61, PLAINTIFFS have brought this action, and claims both survival damages, namely any economic losses of Decedent, and wrongful death damages from said defendants for the wrongful death of decedent, and the resulting injuries.

## EIGHTH CLAIM FOR RELIEF

### ASSAULT AND BATTERY – SURVIVAL AND WRONGFUL DEATH

### (AGAINST ALL DEFENDANTS)

100.     PLAINTIFFS re-allege and incorporate by reference herein paragraphs 1 through 99 of this Complaint.

101.     At or about the dates and places alleged herein, DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS, while acting within the course and scope of their duties as Police Officers for the BPD, without provocation, warrant, necessity or legal justification, assaulted and battered DECEDENT YARBER by shooting him at least ten (10) times and attacking Yarber with unreasonable and excessive force and violence, thereby causing YARBER's injuries and death as herein described.

102.     DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS used unreasonable force against DECEDENT, including but not limited to, shooting DECEDENT.

103.     PLAINTIFFS are informed and believe, and upon such information and belief alleges, DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS, CITY OF BARSTOW, and DOES 5-10, inclusive, and each of them, are responsible for implementing, maintaining, sanctioning, ratifying, and/or condoning a policy, custom, or practice under with the individual DEFENDANTS committed the aforementioned illegal and wrongful acts.

104.     PLAINTIFFS are informed and believes, and upon such information and belief alleges, DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS, CITY OF BARSTOW, and DOES 5-10, inclusive, and each of them are liable for the injuries, damages, and death of YARBER as they knew, or should have known, the customs, practices, policies and acts of the individual DEFENDANTS WALKER,

BARRIENTOS, CARILLO and HELMS, who caused DECEDENT YARBER'S death, by failing to provide him with safety and the medical attention he required when he commenced suffering from medical distress.

105.    As a legal result of all DOE DEFENDANTS and DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS's acts and omissions as described, PLAINTIFF's decedent, YARBER, suffered a traumatic and brutal assault by DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS leading to his death.  PLAINTIFFS have incurred funeral and services expenses in an amount according to proof.

106.    PLAINTIFFS have also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

107.    The CITY is vicariously liable for the wrongful acts of DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

108.    Defendants, and each of them, committed the aforementioned acts and omissions knowingly, willfully, maliciously and with the expressed intent to harm YARBER and conscious or reckless disregard for the risk of death to YARBER.  By reason thereof, PLAINTIFFS seek punitive and exemplary damages from DEFENDANTS, in an amount according to proof at trial.

109.    PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent, and seek both survival damages, including any economic losses of Decedent, and wrongful death damages under this claim.

## **NINTH CLAIM FOR RELIEF**

**VIOLATION OF DECEDENT'S RIGHT TO ENJOY CIVIL RIGHTS**

**(Cal. Civ. Code §52.1)**

**(AGAINST ALL DEFENDANTS)**

110.    PLAINTIFFS re-allege and incorporate by reference paragraphs 1 through 109 of this complaint.

111.    California Civil Code Section 52.1 (the "Bane Act") prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

112.    Conduct that violates the Fourth Amendment violates the California Bane Act.[1]

113.    On information and belief, Defendants WALKER, BARRIENTOS, CARILLO and HELMS, while representing the CITY and acting within the course and scope of their duties, intentionally committed acts of violence against DECEDENT, including shooting him without justification or excuse, integrally participating and failing to intervene in the above violence, and by denying him necessary medical care.  Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures and excessive force under the Fourth Amendment.

114.    On information and belief, the front seat passenger recalls hearing "Nigger we will fucking kill you!" as officers pointed their weapons at the driver and passenger seats.  Defendants also retaliated against DECEDENT when he chose not to further engage with DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS after they used racial slurs and threatened to kill him.  Thus, Defendants also

---

[1] *See Chaudhry v. City of Los Angeles*, 2014 WL 2030195, at *6 (9th Cir. May 19, 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013).

Original Complaint for Damages

violated DECEDENT's Constitutional rights when they retaliated against DECEDENT using excessive and unreasonable force, killing him.

115.    On information and belief, Defendants intentionally and spitefully committed the above acts to discourage DECEDENT from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights, which he was fully entitled to enjoy.

116.    On information and belief, DECEDENT reasonably believed and understood that the violent acts committed by DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS were intended to discourage him from exercising his civil rights, to retaliate against him for invoking such rights, or to prevent him from exercising such rights.

117.    Defendants' above-described conduct, while acting within the course and scope of their duties for the CITY, constituted interference, and attempted interference, by threats, intimidation and coercion, with decedent's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code §52.1.

118.    The conduct of Defendants was a substantial factor in causing PLAINTIFFS' harms, losses, injuries, and damages.

119.    The CITY is vicariously liable for the wrongful acts of DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

120.    Defendants DOES 5-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

121.    The conduct of Defendants was malicious, wanton, oppressive, and

accomplished with a conscious disregard for Decedent's and PLAINTIFF's rights, justifying an award of exemplary and punitive damages as to DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS.

122.    PLAINTIFFS bring this claim both individually and as successors-in-interest to Decedent, and seek survival damages under this claim, as well as attorney's fees.

## TENTH CLAIM FOR RELIEF
### VIOLATION OF DECEDENT'S STATE STATUTORY RIGHTS
### (Cal. Civ. Code §51.7)
### (AGAINST ALL DEFENDANTS)

123.    PLAINTIFFS re-allege and incorporate by reference herein paragraphs 1 through 122 of this complaint.

124.    PLAINTIFFS are informed and believe and thereon allege that the conduct of Defendants WALKER, BARRIENTOS, CARILLO and HELMS and DOES 5 through 10, inclusive, as described herein, was motivated by prejudice against DIANTE YARBER. Decedent is and was readily recognizable as African-American. In engaging in such conduct, Defendants violated decedent's rights under California Civil Code §51.7 to be free from violence, or intimidation by threat of violence committed against him because of his race.

125.    The CITY is vicariously liable for the wrongful acts of DEFENDANTS WALKER, BARRIENTOS, CARILLO and HELMS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

126.    Defendants DOES 5-10 are vicariously liable under California law

and the doctrine of *respondeat superior*.

127.     Under the provisions of California Civil Code §52(b), Defendants are liable for punitive damages for each violation of Civil Code §51.7, reasonable attorney's fees and an additional $25,000.00.

128.     As a proximate result of Defendants' wrongful conduct, decedent suffered damages as hereinafter set forth.  PLAINTIFFS bring this claim as successors-in-interest to Decedent, and seek survival damages under this claim.

## **DAMAGES**

97.      As a direct and proximate result of the defendants acts and/or omissions alleged herein, decedent Diante Yarber suffered:

    a) Shock, fright, anxiety and mental distress

    b) Conscious pain and suffering

    c) Death

    d) Loss of life and loss of enjoyment of life

98.      As a direct and proximate result of the defendants' acts or omissions, PLAINTIFFS have suffered and continue to suffer:

    a) Grief, shock, sorrow and emotional distress.

    b) Loss of love, companionship, and society.

    c) Pecuniary injuries.

    d) Funeral costs.

## **PRAYER**

WHEREFORE, PLAINTIFFS pray judgment against Defendants and each of them as follows:

AS TO EACH CLAIM FOR RELIEF AS APPLICABLE.

1. For General and Special Damages, including both survival and wrongful death damages, according to proof;

2. For Exemplary Damages as provided by law; in an amount to be proved against each individual Defendant;

3. For Attorney's Fees under U.S.C. 1985 and 1988;

4. For Costs of Suit;

5. For such other and further relief as the Court may deem proper

Dated: May 2, 2018                   LAW OFFICES OF JOHN L. BURRIS (Local Counsel)
                                     WASHINGTON LAW FIRM, P.C.
                                     MERRITT LAW FIRM, LLC

By: _____
      JOHN L. BURRIS

### **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues.

1

2   Dated: May 2, 2018                    LAW OFFICES OF JOHN L. BURRIS (Local
                                          Counsel)
3                                         WASHINGTON LAW FIRM, P.C.
                                          MERRITT LAW FIRM, LLC
4

5

6

7

8

9

10                                        By: _____
                                              JOHN L. BURRIS
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Original Complaint for Damages